IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EMILY JOHNSON,

      Plaintiff,

 v.                  OPINION and ORDER

ANDREW SAUL,              19-cv-52-jdp
 Commissioner of the Social Security Administration,

      Defendant.

---

   Plaintiff Emily Johnson seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Johnson not disabled within the meaning of the Social Security Act. Johnson contends that the administrative law judge, Deborah Giesen, erred by: (1) failing to adequately consider whether she satisfied Listing 12.04 for depressive, bipolar, and related disorders; (2) conducting a flawed analysis of her credibility; (3) failing to give due weight to her hospitalizations for self-harm and suicidal ideation; (4) giving more weight to the state agency consultants than to Johnson's treatment providers; and (5) failing to adequately consider her global assessment function score (GAF).[1]

   The court rejects each of these contentions and will affirm the commissioner's decision. The oral argument scheduled for August 29, 2019, is cancelled.

---

[1] In her reply brief, Johnson raises a new contention that the ALJ failed to meet her burden at the final step of her analysis to show that Johnson was capable of performing a full-time job in the national economy. Dkt. 12, at 7–9. Johnson forfeited that contention by failing to make it in her opening brief. In any event, Johnson fails to point to any specific errors in this portion of the ALJ's analysis.

ANALYSIS

Johnson applied for disability benefits in 2015 when she was 28, alleging that she had been disabled since 2012. In an April 2018 decision, the ALJ found that Johnson suffered from three severe impairments: anxiety disorder, depressive disorder, and borderline personality disorder. (The ALJ also found that Johnson suffered from several nonsevere impairments, but they aren't the subject of Johnson's appeal, so the court won't consider them.) In light of Johnson's impairments, the ALJ found in her residual functional capacity assessment (RFC) that Johnson could perform the full range of all exertional levels but limited her to "simple, routine tasks and low stress work where changes are infrequent." R. 21.[2] Johnson could have "occasional interaction with coworkers and supervisors and no interaction with the public." *Id.* Relying on the testimony of a vocational expert, the ALJ found that Johnson couldn't perform her past job as a customer complaint clerk on a full-time basis but that she could perform jobs as an industrial cleaner, a laundry laborer, and a small products assembler.

A. Listing 12.04

An ALJ must find that a claimant is disabled if the claimant's impairments meet or are "medically equal" in severity to an impairment on the list of pre-determined disabling impairments. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); 20 C.F.R. § 404.1529(d)(3). It is the plaintiff's burden to show that she meets a listing. *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011); *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009).

In this case, Johnson says that the ALJ erred in her analysis of Listing 12.04, which is for "depressive, bipolar and related disorders." See 20 C.F.R. § Pt. 404, Subpt. P, App. 1,

---

[2] Record cites are to the administrative transcript, located at Dkt. 6.

§ 12.04. That listing has three groups of criteria, which are called "A," "B," and "C." The ALJ assumed that Johnson satisfied the "A" criteria, so the court need not discuss those.

As for the "B" criteria, a claimant must have a "marked" limitation in two or an "extreme" limitation in one of the following areas of mental functioning: (1) understanding remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The ALJ found that Johnson had mild or moderate limitations for each area; Johnson contends that the ALJ should have found that she had marked or extreme limitations in all four areas. As for the "C" criteria, the claimant's "mental disorder" must be "serious and persistent" and medically treated and result in "marginal adjustment." The ALJ assumed that Johnson had received medical treatment for a serious and persistent medical disorder, but the ALJ found that the disorder had not resulted in marginal adjustment. R. 20.

In his opposition brief, the commissioner says that Johnson hasn't identified any errors in the ALJ's analysis; rather, she simply disagrees with the ALJ's conclusions and is asking the court to reweigh the evidence, which is not permitted. *Walker v. Berryhill*, 900 F.3d 479, 482–83 (7th Cir. 2018). The commissioner also says that any challenge to the ALJ's conclusion about Listing 12.04 fails because the ALJ gave great weight to the opinions of the consulting psychiatrists, neither of whom found that Johnson's impairments meet or equal that listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (rejecting plaintiff's contention that he met or equaled a listing when two consultants rejected that view).

Johnson doesn't meaningfully respond to the commissioner's arguments. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). In fact, Johnson mentions Listing 12.04 only once in her reply brief.

Specifically, Johnson says that that the record doesn't support the ALJ's finding that she "does not need reminders to take her medication." R. 19. She points to a statement in 2015 from a treatment provider: "Emily has a history of taking medications inconsistently. She does not believe setting an alarm will help this, as she says she has tried that before and it did not help." R. 694. Johnson says that the factual error undermines the ALJ's finding that she didn't have a marked or extreme limitation in concentration, persistence, or pace under the B.3 criteria.

Johnson doesn't explain how difficulty with remembering to take her medications relates to concentration, persistence, or pace. Rather, it appears to relate to Johnson's memory. And the ALJ rejected a view that Johnson had marked or extreme memory limitations because mental status exams showed that Johnson had "intact recent and remote memory." R. 19. Johnson doesn't challenge that finding. So even if it is true that Johnson has had difficulty remembering to take her medication, the court isn't persuaded that it is enough to show that the ALJ erred in finding that Johnson doesn't have a marked or extreme limitation. And the court agrees with the commissioner that Johnson's remaining arguments about the listing are simply criticisms of the way the ALJ weighed the evidence. Because this court cannot second guess the ALJ's determinations regarding the importance of particular evidence, Johnson's argument under Listing 12.04 fails.

**B. Subjective complaints**

Johnson says that the ALJ erred when concluding that "the claimant's allegations of disability are not fully consistent with the evidence of record." R. 21. An initial problem with Johnson's argument is that she doesn't identify any particular statements she made that she believes are inconsistent with the ALJ's RFC. Because Johnson doesn't specify the statements she believes that the ALJ should have credited, it is impossible to determine whether those

4

statements would entitle her to additional restrictions. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

In any event, Johnson hasn't shown that the ALJ's credibility analysis is "patently wrong," which is what she is required to show. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Again, much of Johnson's discussion on this issue is devoted to criticizing how the ALJ weighed the evidence, which isn't a ground for remand.

Johnson also says that the ALJ improperly relied on her daily activities, an issue that is a frequent subject of appellate decisions. *E.g.*, *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("[The court of appeals has] repeatedly warned against equating the activities of daily living with those of a full-time job."). In this case, the ALJ pointed to activities such as watching tv, doing chores, taking vacations, and socializing with friends as evidence that Johnson was not as limited as she claimed. R. 26. It may be that the ALJ believed that Johnson's activities showed that she was motivated and engaged when she chose to be, but the ALJ didn't say that expressly.

Regardless, the court isn't persuaded that Johnson is entitled to a remand. Even if the court assumes that Johnson's activities weren't probative, an ALJ's credibility determination doesn't have to be perfect. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility assessment even though some of his reasoning was not supported by the record). In this case, the ALJ did not rest her credibility determination solely on what Johnson calls "trivial" activities. Rather, the ALJ also relied on statements Johnson made that call her credibility into question. First, Johnson "falsely reported that she had multiple children." R. 24. Second, Johnson admitted to a health care provider that she had decided to reduce her hours at her job to better her chances at getting disability benefits, R. 24, suggesting that she had the

ability to work more but simply "was not motivated to do so." R. 25. These statements raise serious questions that Johnson does not address. And they provide a sufficient basis for concluding that the ALJ's credibility determination wasn't patently wrong.

## C. Consideration of Johnson's past hospitalizations

Johnson was hospitalized five times between April 2013 and April 2017 (one year before the ALJ issued her decision):

- in April 2013, Johnson overdosed on medication, but admitted that she was seeking attention and didn't want to die;

- in April 2015, Johnson spent five days in the hospital after she reported thoughts of self-harm;

- in June 2015, Johnson returned to the hospital for four days after reporting thoughts of self-harm again;

- in January 2016, Johnson overdosed on insulin, cold medicine, and ibuprofen;

- in April 2017, Johnson was hospitalized after reporting thoughts of self-harm.

R. 22–23.

Johnson criticizes the ALJ's consideration of her past hospitalizations, but she fails to identify any specific errors in the ALJ's analysis. The ALJ discussed each hospitalization in her decision, and concluded that they didn't support a finding of disability. In support of that decision, the ALJ relied on the relatively short duration of the hospital stays, the fact that Johnson denied that she was trying to kill herself, mental health exams in which Johnson denied suicidal ideation, and Johnson's history of part-time work. Regardless whether the court would agree with the ALJ's assessment as a matter of first impression, Johnson cites no authority for the view that five hospitalizations over the span of four years is per se disabling. Because the

court may not substitute its judgment for that of the ALJ, *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017), this argument fails as well.

**D. Opinion evidence**

Johnson says that the ALJ erred by giving more weight to the opinions of two consulting psychiatrists than to two nurse practitioners who treated Johnson, Monica Hofmann and Hailey Schneider.[3] Under the regulations in effect at the time Johnson filed her application, the ALJ must give good reasons for declining to give controlling weight to the opinion of a treating physician. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). The ALJ did that in this case.

As for Hofmann's opinion that Johnson would miss work approximately two days each month as a result of "intermittent flare ups," R. 827, the ALJ provided multiple reasons for declining to give more weight to the opinion, including that the opinion was inconsistent with Hofmann's own treatment records. R. 24.[4] Johnson points to nothing in Hofmann's notes that discusses frequent flare ups or any other reason related to Johnson's mental health that would cause Johnson to miss two or more work days a month. *See Burmester v. Berryhill,* 920 F.3d 507, 512 (7th Cir. 2019) (ALJ did not err in declining to give more weight to opinion of treating physician when opinion was inconsistent with physician's own notes).

---

[3] In her reply brief, Johnson also cites a letter from her lawyer to the Social Security Administration stating that Johnson would be off task 15 percent of the time. R. 361. But Johnson didn't raise that issue in her opening brief and she doesn't cite any medical evidence to support the statement by her lawyer.

[4] The court of appeals has stated that missing more than three days of work each month precludes substantial gainful employment. *Mitze v. Colvin*, 782 F.3d 879, 881 (7th Cir. 2015). Although Johnson doesn't cite any authority for the view that missing two days of month is enough to be disqualifying, the commissioner doesn't raise that issue, so the court will not consider it.

As for Schneider's opinion that she did "not recommend full time work due to mental health reasons," R. 353, the ALJ gave the opinion limited weight because it was vague and didn't identify any functional limitations. R. 24. The ALJ also observed that Johnson had been "working enough hours . . . that she was close to earning the threshold level for substantial gainful activity" and reduced those hours to qualify for disability benefit. R. 25.

Johnson doesn't deny that an ALJ isn't required to defer to a conclusory opinion that a claimant is unable to work. *See Loveless,* 810 F.3d at 507 ("[T]he ALJ did not have to accept [the treating phsycian's] October 2012 conclusory statement that [the claimant] could not work. The ALJ needed only to weigh [the physician's] assessments about the nature and severity of [the claimant's] impairments."). Instead, Johnson says that her functional limitations "are self-evident" from the record. Dkt. 9, at 21. But Johnson fails to identify what these functional limitations are and she doesn't cite any authority for the view that an ALJ is required to use medical records to "read in" functional limitations that a treatment provider doesn't discuss in her opinion.

As for the ALJ's reliance on Johnson's history of working part time, Johnson says that an ability to work part time doesn't show an ability to work full time, which is the relevant standard. *See Voigt v. Colvin,* 781 F.3d 871, 874 (7th Cir. 2015) ("To qualify for gainful employment one must be able to work on a 'sustained basis,' defined as eight hours a day five days a week."). The ability to work part time isn't dispositive, *see Lanigan v. Berryhill,* 865 F.3d 558, 565 (7th Cir. 2017), but that doesn't mean that Johnson's part-time work is irrelevant. Because Johnson admits she can work part time, the key question is whether there is any evidence that working more hours is likely to exacerbate her condition. But Johnson hasn't

shown that there is a connection between working and her flare ups.[5] And she hasn't challenged the ALJ's finding that she was trying to reduce her hours, not because working was too stressful for her, but because she was trying to qualify for disability benefits. Under these circumstances, the ALJ did not err by concluding that Johnson's work history was probative of her ability to work full time.

As for the opinions of the consulting psychiatrists, Johnson's only objection is that the psychiatrists did not treat her, so the ALJ shouldn't have given them more weight than the opinions of her treatment providers. But there is no per se rule that the ALJ must give more weight medical experts who treated the claimant. As discussed above, the rule is that the ALJ must have good reasons for declining to credit the opinions of treating physicians. Because the court has concluded that the ALJ had good reasons for doing this, this argument fails.

**E. GAF score**

In one paragraph in her opening brief, Johnson contends that the ALJ should have given greater weight to Johnson's GAF score, which ranged from 41 to 70. "The GAF is a 100–point metric used to rate overall psychological, social, and occupational functioning, with lower scores corresponding to lower functioning." *Lanigan*, 865 F.3d at 561 (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed., Text Rev. 2000)). A score of 41 "signifies serious psychiatric illness" while a score over 65 "signif[ies] 'mild symptoms' and 'generally functioning pretty well.'" *Voigt v. Colvin*, 781 F.3d 871, 874–75 (7th Cir. 2015). As the court of appeals has observed, the American Psychiatric Association has

---

[5] In fact, Johnson alleges that it is her mother who triggers her, not coworkers or supervisors. Dkt. 9, at 9 (citing R. 697). Although Johnson cites a statement from her employment specialist that Johnson was sometimes rude to customers, R. 847, the RFC prohibits Johnson from interacting with the public, so that isn't a concern.

9

abandoned the GAF scale as a measure of functioning because of the scale's "conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). *See also Green v. Saul*, No. 19-1192, – F.3d –, 2019 WL 3297472, at *4 (7th Cir. July 23, 2019) (upholding ALJ's decision not to credit GAF score because it "is a subjective test that can differ from one clinician to another").

In this case, the ALJ said that a GAF score "can offer some evidence of regarding the severity of the claimant's mental impairments," but it is "a mere snapshot of the claimant's ability to function at a particular time," so she declined to afford it significant weight. R. 25. Johnson says that the ALJ should have placed greater weight on her GAF score, but she fails to explain why. Even if GAF scores were probative of functioning, Johnson doesn't provide a basis for concluding that her score of 41 is more probative than her score of 70. So Johnson isn't entitled to relief on this ground.

**F. Conclusion**

The court concludes that the ALJ's decision is supported by substantial evidence, which is all that is required. *See Jozefyk v. Berryhill,* 923 F.3d 492, 496 (7th Cir. 2019) ("An ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotations omitted)). The court will affirm the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the August 29, 2019 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered August 23, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge